## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

JOHN CHENDORAIN,
>        Appellant,

v.

DEPARTMENT OF THE TREASURY,
>        Agency.

DOCKET NUMBER
DC-0432-20-0568-I-1

DATE:  October 22, 2024

# THIS ORDER IS NONPRECEDENTIAL[1]

Kristen Farr, Esquire, Washington, D.C., for the appellant.

Richard Johns, Esquire, Washington, D.C., for the agency.

### BEFORE

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman
Henry J. Kerner, Member

### REMAND ORDER

The appellant has filed a petition for review of the initial decision, which sustained his removal based on unacceptable performance pursuant to 5 U.S.C. chapter 43.  For the reasons set forth below, we GRANT the petition for review, VACATE the initial decision, and REMAND the appeal to the Washington

---

[1]  A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  *See* 5 C.F.R. § 1201.117(c).

Regional Office for further adjudication consistent with *Santos v. National Aeronautics and Space Administration*, 990 F.3d 1355 (Fed. Cir. 2021).

**BACKGROUND**

¶2 The agency appointed the appellant to a GS-14 Information Technology Specialist position in November 2014. Initial Appeal File (IAF), Tab 4 at 12. For this position, the appellant's performance was rated in four core competencies, known as critical elements: (1) communication; (2) customer service; (3) teamwork; and (4) technical competency. *Id*. at 63-65. At the end of the 2019 performance year, which ran from October 1, 2018, through September 30, 2019, his supervisor rated his performance unacceptable in the two critical elements of communication and teamwork. *Id*. at 23-29. On November 20, 2019, the agency issued the appellant a notice of unacceptable performance in those two critical elements, and it provided him with a 60-day performance improvement plan (PIP) to demonstrate acceptable performance or be demoted or removed. *Id*. at 30-36. The PIP notice set forth the requirements for the appellant to achieve fully successful performance in the communication and teamwork critical elements at issue over the duration of the PIP. *Id*. at 33-35. In addition to general guidance on those critical elements, the PIP notice also set forth several specific tasks for the appellant to complete during the PIP. *Id*.

¶3 Under the communication critical element, the PIP notice set forth three tasks for the appellant to complete. IAF, Tab 4 at 33-34. Specifically, it required him to submit two written reports: the first concerning automated testing software and how it will be utilized by the development operations continuous integration/continuous development process, and the second concerning an assessment of the Structured Query Language server accompanied with recommendations for the Azure cloud. *Id*. The third task set forth in the PIP notice under the communication critical element required the appellant to complete an upgrade of the AdLib server, keeping the team and supervisor

advised of his plan and progress, and subsequently decommissioning the older, legacy, AdLib server. *Id*. at 34. Under the teamwork critical element, the PIP notice set forth four tasks for the appellant to complete: the completion of the SharePoint cumulative update, closing out 3 of the 14 open Plans of Action and Milestones, training the administrative team on how to recover databases using a particular tool, and reducing all large content databases. *Id.* at 35.

¶4 Following the conclusion of the PIP, on February 27 2020, the appellant's supervisor informed the appellant that his performance in the critical elements of communication and teamwork remained unacceptable, and he proposed the appellant's removal. IAF, Tab 4 at 15-22. Following the appellant's written and oral responses, the deciding official issued a final decision sustaining the proposed removal and removing the appellant from Federal service, effective April 1, 2020. *Id.* at 48-62.

¶5 The appellant appealed his removal, arguing that his performance was acceptable and that the removal action was the result of age discrimination, reprisal for reporting alleged discrimination, and harmful error. IAF, Tab 1 at 6. After holding the appellant's requested hearing, the administrative judge issued an initial decision. IAF, Tab 19, Initial Decision (ID). She found that the agency proved the necessary elements, as they existed at the time, to support a chapter 43 performance-based removal by substantial evidence. ID at 9-25. She also concluded that the appellant failed to prove any of his affirmative defenses.[2] ID at 25-27. Accordingly, she affirmed the appellant's removal. ID at 1, 27.

¶6 The appellant has filed a petition for review in which he reasserts his arguments from below that the agency failed to afford him a reasonable opportunity to improve his performance and failed to prove that his performance

---

[2] The appellant does not challenge on review any of the administrative judge's findings regarding his affirmative defenses. We have reviewed the record and conclude that these findings are sound. We discern no basis to disturb them. *See* 5 C.F.R. § 1201.115 ("The Board normally will consider only issues raised in a timely filed petition or cross petition for review.").

was unacceptable. Petition for Review (PFR) File, Tab 1 at 7-11, 20-29. In this regard, he asserts that the administrative judge erred in her findings of fact and credibility determinations. *Id*. at 11-20. The agency has filed a response to the appellant's petition for review. PFR File, Tab 3.

## DISCUSSION OF ARGUMENTS ON REVIEW

¶7    When the initial decision was issued, the Board's case law provided that, in a performance-based action under 5 U.S.C. chapter 43, an agency must establish by substantial evidence that: (1) the Office of Personnel Management (OPM) approved its performance management system; (2) the agency communicated to the appellant the performance standards and critical elements of her position; (3) the appellant's performance standards are valid under 5 U.S.C. § 4302(c)(1); (4) the agency warned the appellant of the inadequacies of his performance during the appraisal period and gave him a reasonable opportunity to improve; and (5) the appellant's performance remained unacceptable in at least one critical element. *Lee v. Department of Veterans Affairs*, 2022 MSPB 11, ¶ 13; *White v Department of Veterans Affairs*, 120 M.S.P.R. 405, ¶ 5 (2013); *Lee v. Environmental Protection Agency*, 115 M.S.P.R. 533, ¶ 5 (2010). As noted in the initial decision, the parties stipulated that the agency met its burden of proof regarding elements 1-3.[3]  ID at 9; IAF, Tab 15 at 3-4.

---

[3] The Board's regulations provide that the parties may stipulate to any matter of fact and that such stipulations satisfy a party's burden of proving the fact alleged. *See* 5 C.F.R. § 1201.63; *see also Anderson v. Tennessee Valley Authority*, 77 M.S.P.R. 271, 275 (1998). Whether OPM approved the appraisal system and whether the performance standards were communicated to the appellant are pure questions of fact and were, thus, properly stipulated to, and the administrative judge properly relied on the stipulations. However, stipulations concerning matters of mixed fact and law are not binding on the Board, and the Board must resolve for itself whether the agency proved such matters. *See Anderson*, 77 M.S.P.R. at 275. Here, the issue of whether the appellant's performance standards are valid constitutes a matter of mixed fact and law. Thus, we briefly address this element here. To be valid, performance standards must, to the maximum extent feasible, permit the accurate appraisal of performance based on objective criteria, and must be reasonable, realistic, attainable, and clearly stated in writing. *Towne v. Department of the Air Force*, 120 M.S.P.R. 239, ¶ 21 (2013). They must also be specific enough to provide an employee with a firm benchmark toward

¶8　　　　After review of the record and consideration of the appellant's arguments, we discern no basis to disturb the administrative judge's finding that the agency proved the elements required to establish a chapter 43 action under the law when the initial decision was issued. Specifically, the appellant argues, among other things, that the administrative judge failed to consider the testimony of three of his coworkers who had first-hand knowledge of his ability to communicate and work with the team, skills implicated by the critical elements highlighted in the PIP notice. PFR File, Tab 1 at 14-20. The appellant claims that these three witnesses "paint a very different picture" of him "that is more closely aligned to the documentary evidence in the record." *Id*. at 20. However, he cites little documentary evidence to support his claim, and he does not directly address or identify how these testimonies contradict the well-explained findings of the administrative judge on the merits of the agency's evidence of his performance. ID at 11-22; *see Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (2002); *Crosby v. U.S. Postal Service*, 74 M.S.P.R. 98, 106 (1997) (stating that the Board will not disturb an administrative judge's findings when she considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions on issues of credibility); *Broughton v. Department of Health and Human Services*, 33 M.S.P.R. 357, 359 (1987) (same). We therefore discern no error by the administrative judge in this regard.

---

which to aim his performance and must be sufficiently precise to invoke general consensus as to their meaning and content. *Id*. Both the critical elements of communication and teamwork explain by what measures they are evaluated, and they clearly set forth benchmarks for how to meet differing ratings of performance. IAF, Tab 4 at 64-65. The record supports the stipulation that the performance standards are valid. Although the appellant appears to argue for the first time on review that the performance standards as set forth specifically in the PIP notice are not valid because they are "unreasonably high," PFR File, Tab 1 at 10, we construe this argument as a disagreement concerning whether he achieved acceptable performance, which is a different discussion than the validity of the performance standard by which he was evaluated.

<u>Remand is necessary to afford the parties an opportunity to submit evidence and argument regarding whether the appellant's placement on a PIP was proper.</u>

¶9    Although the appellant has identified no basis for us to disturb the administrative judge's findings, we nonetheless must remand this appeal for another reason. As noted above, during the pendency of the petition for review in this case, the Federal Circuit issued *Santos*, 990 F.3d at 1360-63, in which it held that, in addition to the five elements of the agency's case set forth above, the agency must also justify the initiation of a PIP by proving by substantial evidence that the employee's performance was unacceptable prior to the PIP. The Federal Circuit's decision in *Santos* applies to all pending cases, including this one, regardless of when the events took place. *Lee*, 2022 MSPB 11, ¶ 16.

¶10    We observe that the record in this case already contains evidence suggesting that the appellant's performance prior to the initiation of the PIP was unacceptable. For instance, in December 2017, the appellant's supervisor issued him a written counseling for inappropriate conduct towards fellow employees and contractors concerning three incidents: his failure to participate or give notice that he was unable to participate in a risk assessment phone call and two instances of unprofessional responses to emails. IAF, Tab 4 at 30-31; Tab 11 at 65-66. Additionally, in April 2019, the appellant's supervisor issued him an oral warning, confirmed in writing, concerning several more alleged instances when his performance, among other things, "exhibited gross deficiencies" in the critical elements of communication and teamwork. IAF, Tab 4 at 30-31; Tab 11 at 71-74. Further, as stated above, the appellant was also rated unacceptable in the critical elements of communication and teamwork in his 2019 performance evaluation. IAF, Tab 4 at 24-25. On the other hand, however, the record also contains evidence that the appellant received a within grade increase—effective November 10, 2019—which was after the 2019 performance evaluation but before the implementation of the PIP. IAF, Tab 1 at 8. The documentation in support of that action states that the appellant's "work performance is at an acceptable level

of competence." *Id*.  To resolve this issue, we remand the appeal to give the parties the opportunity to present argument and additional evidence on whether the appellant's performance during the period leading up to the PIP was unacceptable in one or more critical elements.  *See Lee*, 2020 MSPB 11, ¶¶ 15-17. On remand, the administrative judge shall accept argument and evidence on this issue and shall hold a supplemental hearing if appropriate.  *Id*., ¶ 17.

¶11    The administrative judge shall then issue a new initial decision consistent with *Santos*.  *See id*.  If the agency makes the additional showing required under *Santos* on remand, the administrative judge may incorporate in the remand initial decision her prior findings on the other elements of the agency's case, and the appellant's affirmative defenses.  *See id*.  However, regardless of whether the agency meets its burden, if the argument or evidence on remand regarding the appellant's pre-PIP performance affects the administrative judge's analysis of the appellant's affirmative defenses, the AJ should address such argument or evidence in the remand initial decision.  *See Spithaler v, Office of Personnel Management*, 1 M.S.P.R. 587, 589 (1980) (explaining that an initial decision must identify all material issues of fact and law, summarize the evidence, resolve issues of credibility, and include the administrative judge's conclusions of law and his legal reasoning, as well as the authorities on which that reasoning rests).

## ORDER

¶12    For the reasons discussed above, we remand this case to the Washington Regional Office for further adjudication in accordance with this Remand Order.


FOR THE BOARD:                    *Gina K. Grippando*
                                 _____
                                 Gina K. Grippando
                                 Clerk of the Board

Washington, D.C.